UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 SEP 27  AM 11: 05

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| HOWARD DAVIS, On Behalf of Himself and All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CENTRAL VERMONT PUBLIC SERVICE CORPORATION, WILLIAM R. SAYRE, LAWRENCE J. REILLY, ROBERT L. BARNETT, ROBERT G. CLARKE, JOHN M. GOODRICH, ROBERT B. JOHNSTON, ELISABETH B. ROBERT, JANICE L. SCITES, WILLIAM J. STENGER, DOUGLAS J. WACEK, GAZ MÉTRO LIMITED PARTNERSHIP, and DANAUS VERMONT CORP.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 5:11-cv-181<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER RE: SETTLEMENT APPROVAL, CLASS CERTIFICATION, AND ATTORNEY'S FEE AWARD AND FINAL JUDGMENT

This matter came before the court on July 11, 2012 for a hearing (the "Fairness Hearing") to determine whether the terms and conditions of the Settlement Agreement, dated November 28, 2011 (the "Settlement Agreement") are fair, reasonable, and adequate, whether a class should be certified as proposed, and whether a Final Order and Judgment should be entered. Post-hearing, on July 23, 2012, Plaintiff filed contemporaneous time records in support of his requested award of attorney's fees and expenses. The Central Vermont Public Service Corporation ("CVPS") Defendants[1] filed a response to Plaintiff's contemporaneous time records on August 9, 2012.

---

[1] CVPS, William R. Sayre, Lawrence J. Reilly, Robert L. Barnett, Robert G. Clarke, John M. Goodrich, Robert B. Johnston, Elisabeth B. Robert, Janice L. Scites, William J. Stenger, and Douglas J. Wacek comprise the CVPS Defendants.

I.      **Factual and Procedural Background.**

This action arises out of the acquisition of CVPS by Gaz Métro Limited Partnership ("Gaz Métro") through the Merger (the "Gaz Métro Merger") which was consummated on June 27, 2010.  On July 13, 2011, one day after CVPS announced its decision to enter into the Gaz Métro Merger, Plaintiff filed this putative class action suit, alleging breach of fiduciary claims under Vermont law.

On August 1, 2011, CVPS filed a preliminary proxy statement (the "Preliminary Proxy Statement") with the U.S. Securities and Exchange Commission ("SEC").  The following day, Plaintiff filed an Amended Complaint, alleging violations of Sections 14(a) and 20 of the Securities Exchange Commission Act of 1934.  The thrust of Plaintiffs' amended allegations was a claim that the Preliminary Proxy Statement was materially misleading because it failed to disclose the underlying data upon which Lazard Frères & Co. LLC ("Lazard"), CVPS's financial advisor which analyzed the proposed sale and acquisition price, based its analyses.  Notably, Plaintiff did not and has not alleged that any of Lazard's conclusions would have changed had the omitted information been disclosed.

On August 29, 2011, CVPS filed its Final Proxy Statement with the SEC and disseminated it to CVPS shareholders (the "8/29 Proxy").  The 8/29 Proxy contained the disclosures set forth in the Preliminary Proxy and certain additional disclosures, including the unlevered free cash flow projections the disclosure of which, among other things, Plaintiff had sought in the Amended Complaint.

Following the filing of Plaintiff's Amended Complaint, the parties entered into settlement negotiations which included negotiating a protective order governing discovery, Defendants' disclosure of additional documents to Plaintiff, including the minutes of the meetings of the CVPS Board and presentations to the Board by Lazard and CVPS management, and other discovery.

On September 1, 2011, Plaintiff moved for a preliminary injunction, seeking to enjoin the scheduled September 29, 2011 shareholder vote on the proposed Gaz Métro

Merger.  In response, on September 16, 2011, the CVPS Defendants moved to dismiss the Amended Complaint for failure to state a claim.  Shortly thereafter, the parties reached an agreement in principle to settle this action and, at their joint request, the court cancelled the scheduled hearing on Plaintiff's motion for a preliminary injunction.

On September 19, 2011, pursuant to the parties' settlement, CVPS filed a Supplemental Proxy Statement (the "Supplemental Proxy") which included additional information relied upon by Lazard in determining that the proposed acquisition price for CVPS shares was fair.  In exchange for these disclosures, Plaintiff seeks to release his own claims and those of all putative class members relating to the sale of CVPS and the accompanying sales process, with the exception of class members' exercise of any appraisal rights.

On September 29, 2011, 97.56% of the CVPS shares casting votes at the shareholder meeting approved the Gaz Métro Merger.  Thereafter, Plaintiff's counsel conducted two half-day depositions as confirmatory discovery and the parties finalized their settlement.  On November 28, 2011, the parties jointly sought the court's approval of their Settlement Agreement and further sought class certification.  At a December 21, 2011 hearing, the court denied class certification without prejudice, noting that Plaintiff had failed to demonstrate that the requirements of Fed. R. Civ. P. 23 had been satisfied. The court also rejected the proposed notice to putative class members as insufficient under Fed. R. Civ. P. 23(c)(2).

On March 2, 2012, Plaintiff submitted a revised request for preliminary approval and a revised proposed notice to putative class members.  On April 10, 2012, the court issued its Preliminary Approval Order (Doc. 60), granting preliminary approval of the Settlement Agreement and class certification, setting the Fairness Hearing for July 11, 2012, and directing the parties as to the form and manner of notice to class members. The court stayed all proceedings in this matter pending the outcome of the Fairness Hearing.

Prior to the Fairness Hearing, the court received six objections, three of which

3

were duplicative and filed on behalf of "The Arbitrage Funds." (Docs. 80-82.) These objections state the filer does "not agree to the Release of Claims," without further elaboration. The remaining objections consist of an objection to the requested award of attorney's fees, contending that the lawsuit was without merit and the practice of filing such lawsuits should not be "rewarded" (Doc. 71) and an objection to Plaintiff's lawsuit, contending the "lawsuit is without merit," "was baseless from the beginning" and "should be dismissed with prejudice." (Doc. 72.)

At the court's Fairness Hearing, no person appeared to object to the approval of the Settlement Agreement or to class certification. Counsel for the plaintiffs in a pending parallel putative class action, *IBEW Local 98 Pension Fund v. Central Vermont Public Service Corp.*, Docket No. 5:11-cv-222 ("*IBEW v. CVPS*"), appeared at the Fairness Hearing and made statements on the record but neither objected to the Settlement Agreement, nor opposed any aspect of class certification.

## II.   Conclusions of Law, Analysis, and Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

**1. Incorporation of Settlement Agreement.** This Final Order and Judgment incorporates the Settlement Agreement filed in the above-captioned matter on November 28, 2011. (Doc. 43-3.)

**2. Notice to the Proposed Class.** The mailing of the Notice of Pendency of Class Action, Proposed Settlement of Class Action and Settlement Hearing (the "Notice") took place in accordance with the court's Preliminary Approval Order. More than three thousand record holders of CVPS shares received direct notice. Brokerage firms and other financial institutions holding CVPS shares on behalf of the beneficial owners were also separately notified; they requested and received an additional 8,587 copies of the Notice. The Notice is hereby determined to be the best notice practicable under the circumstances and in compliance with the Fed. R. Civ. P. 23, the requirements of due process, and applicable law.

4

**3. Certification of a Settlement Class.** Plaintiff asks the court to certify a settlement class pursuant to Fed. R. Civ. P. 23 consisting of the following class action members:

> All record holders and beneficial owners of any share(s) of Central Vermont Public Service Corporation ("CVPS") common stock ("Common Stock"), who held any such share(s) at any time during the period beginning on and including January 1, 2011, through and including the date of the Preliminary Approval Order, including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, but excluding the Defendants.

"Although Fed. R. Civ. P. 23 does not explicitly provide for certifying settlement-only classes, the district court derives its authority to do so from Fed. R. Civ. P. 23(d), which authorizes the court to 'issue orders that [ ] determine the course of proceedings.'" *Chin v. RCN Corp.*, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (citation omitted). The Second Circuit has recognized that "[t]emporary settlement classes have proved to be quite useful in resolving major class action disputes." *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). "Before certification is proper for any purpose -- settlement, litigation, or otherwise -- a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

The party seeking certification "bears the burden of establishing the existence of all four Rule 23(a) requirements, often referred to as the criteria of 'numerosity, commonality, typicality, and adequacy.'" *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350 (E.D.N.Y. 2006) (citations omitted); *see also* Fed. R. Civ. P. 23(a).

### a. Numerosity.

In determining whether a class is so numerous that joinder of all class members is impracticable, joinder is "generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen, S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Here, the proposed

settlement class consists of all record and beneficial owners of CVPS common stock since January 1, 2011 through the date of this Order. The Amended Complaint alleges that, as of February 28, 2011, over 13 million shares were outstanding. Joinder of each of these shareholders will be difficult, inconvenient, and expensive, and will unduly complicate and delay the resolution of this lawsuit. Joinder is thus impracticable and the numerosity requirement has been satisfied.

### b. Commonality.

Commonality requires the existence of questions of law or fact common to the class. It is "not a demanding standard, as it 'is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims.'" *Menkes*, 270 F.R.D. at 90 (quoting *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009)). In other words, class members' "claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Rule 23(b)(3) also requires that common questions of law and fact predominate over individual questions. This "predominance" requirement is met "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

This case challenges the adequacy of CVPS's disclosures to shareholders, whether the members of CVPS's Board of Directors breached their fiduciary duty to shareholders, and whether the Gaz Métro Merger is fair for all CVPS shareholders. These claims raise issues of fact and law common to all proposed class members. *See* 1 J. McLaughlin, Class Actions: Law and Practice § 4.8 at 4-46 (3d ed. 2006) ("Courts generally have held that cases alleging violations of the federal securities law based on material misrepresentations or omissions in uniform publicly filed or disseminated documents,

such as registration statements and prospectuses, SEC filings, and press releases, reach the low threshold required for commonality."). Correspondingly, whether the Settlement Agreement is fair, reasonable, and adequate is also an issue common to all members of the proposed class. Accordingly, the court finds that the requirements of commonality and predominance have been satisfied.

### c. Typicality.

Rule 23(a)(3) requires Plaintiff's claims to be "typical" of the class. This requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation and quotation marks omitted). Plaintiff's claims in this case meet the typicality requirement because they arise out of the same course of events experienced by all shareholders of CVPS common stock during the relevant time period. In other words, a class member who sought to assert the same or similar claims to those alleged by Plaintiff would need to make the same or similar legal arguments to establish Defendants' liability. The requirement of typicality has thus been satisfied.

### d. Adequacy.

To ensure adequacy, a court determines whether "(1) the class representative's interests are not antagonistic to other class members and the class representative's character assures a vigorous prosecution; and (2) the class representative's counsel possesses the competence to undertake the litigation." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998) (citations omitted). This inquiry focuses on "uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *Flag*, 574 F.3d at 35 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citation omitted). To warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding

with the litigation." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996).

Plaintiff Howard Davis, as the proposed class representative, shares the same interests as the members of the proposed class and has vigorously pursued this litigation. He did not acquire his CVPS common stock for purposes of initiating this lawsuit but has been a CVPS shareholder since May 2007. He has not served as a class representative previously.[2] He seeks no incentive award for his services as a class representative. There are no apparent conflicts of interest between him and the proposed class. Plaintiff Howard Davis is hereby appointed as the Class Representative.

The "role of settlement counsel is to assist the [c]ourt in the process leading to the approval of the settlement." *In re Holocaust Victim Assets Litig.*, 2010 WL 3851697, at *1 (E.D.N.Y. Sept. 24, 2010) (citation omitted). Courts will approve class counsel for purposes of settlement if they "will fairly and adequately protect the interests of the Settlement Class[ ]." *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3253037, at *1 (S.D.N.Y. Nov. 8, 2006).

In its Preliminary Approval Order, the court noted that the attorneys in *IBEW v. CVPS* may seek to be appointed counsel at the Fairness Hearing and the court would consider "which counsel is best able to represent the interests of the class pursuant to Fed. R. Civ. P. 23(g)(2)." (Doc. 60 at 11). As previously noted, although at the Fairness Hearing counsel for the plaintiffs in *IBEW v. CVPS* appeared and made statements on the record, he did not interpose any objections to the Settlement Agreement or class certification, and did not request to be appointed class counsel.

Plaintiff's proposed counsel, Juan E. Monteverde, Esq. and Brian Moon, Esq. of Faruqi & Faruqi, LLP, New York, New York, engage in a nationwide practice of class action litigation. They are familiar with the applicable securities law and have pursued many similar lawsuits elsewhere. They have pursued this litigation competently,

---

[2] At the Fairness Hearing, the court expressed a concern regarding "class representatives who do this kind of thing as a business and they have been class representatives in numerous class action suits and have acquired their interest in the corporation shortly before the business deal occurred." (Tr. 7/11/12 at 4.) Plaintiff Howard Davis does not share these characteristics.

diligently, and expeditiously.  The court thus finds that they are "qualified, experienced and generally able to conduct the litigation." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (citation omitted).   Their local counsel, Mark E. Furlan, Esq. and A. Jeffry Taylor, Esq., are attorneys who are known to the court and who are familiar with Vermont law.  Plaintiff's proposed counsel is hereby appointed class counsel.

      **e.  Rule 23(b).**

      In addition to satisfying the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), Plaintiff must establish that a class action is appropriate under Rule 23(b).  Rule 23(b)(1) permits class certification if Rule 23(a) is satisfied and if the prosecution of separate actions by or against individual members of the class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants or if individual adjudications would, as a practical matter, govern the interests of members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

      Here, were this action to proceed by separate lawsuits, the Defendants may be subject to inconsistent burdens with respect to the disclosures they are required or not required to make to CVPS shareholders.  One court may find the disclosures sought by Plaintiff material to the Gaz Métro Merger, another court may conclude that the disclosures are unnecessary and would only needlessly complicate and confuse the information provided to shareholders and upon which they could reasonably be expected to rely.  Materiality may thus be a fluid concept dependent upon the facts and circumstances of the case and the issues presented. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991) (A fact is material, "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote[.]").  Individual adjudications of class members' claims regarding the adequacy of CVPS's disclosures and whether the individual defendants acted consistently with their fiduciary obligations would not only make it difficult for the Defendants to determine

9

how to conduct themselves, but would make it difficult for class members to protect their own interests.

Because Plaintiff has satisfied the requirements of Fed. R. Civ. P. 23(a) and (b)(1), the court hereby certifies the class as a non-opt out class for settlement purposes.

**4. Approval of the Settlement Agreement**.  In deciding whether to approve the Settlement Agreement, the court acknowledges that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citations omitted) *see also* 2 J. McLaughlin, Class Actions: Law and Practice § 6.3 at 6-9-10 ("Courts have consistently noted that the public interest in favoring the settlement of litigation is even stronger in the context of class action litigation, where one proceeding can resolve many thousands or even millions of claims that might otherwise threaten to swamp the judiciary.").  Settlements generally advance the public interest because they minimize the expense of litigation, avoid the expenditure of judicial resources, and ensure injured parties' recoveries without the time, expense, and inconvenience of litigation.

The claims of a certified class may be settled "only with the court's approval." Fed. R. Civ. P. 23(e).  In deciding whether to approve a settlement, the court must determine, after a hearing, whether it is "fair, reasonable and adequate," Fed. R. Civ. P. 23(e)(2), and is not the product of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

In approving a settlement of a class action, the court has a special duty to safeguard the interests of absent class members who will be bound by the disposition. *See In re Agent Orange Product Liability Litig.*, 996 F.2d 1425, 1438 (2d Cir. 1993). Several courts, including the Second Circuit, have characterized this duty as fiduciary in nature. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (tasking the district court to act "as a fiduciary who must serve as a guardian of the rights of absent class members[.]"); *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("We and other courts have gone so far as to term the district court in the settlement phase of a class action suit a fiduciary of the class[.]").  The court must

thus scrutinize the proposed settlement from the absent class members' perspective; "[t]his analysis requires the court to consider both 'the settlement's terms and the negotiating process leading to settlement.'" *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  The Second Circuit has identified nine factors to be considered in making this determination:

> (1)the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted) (abrogated on other grounds by *Goldberger*); *see also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable, and adequate if . . . it was the product of arm's length negotiations conducted by capable counsel experienced in class action litigation . . . , and if it occurred after meaningful discovery.") (citations omitted).

In this case, the Settlement Agreement was negotiated on an arms-length basis between experienced and competent counsel after a thorough investigation of the underlying facts and the applicable law.  In exchange for their release of claims, the class members have received additional disclosures relevant to the price they were to receive and ultimately received for their CVPS shares.  Plaintiff characterizes this as a benefit to the class because it assured class members that the price they were receiving for their shares was fair.  The additional information disclosed included some of the information relied upon by Lazard in evaluating the fairness of the acquisition price.  Plaintiff concedes that the market did not react to the supplemental disclosures (Tr. 7/11/12 at 29)

but argues that "[t]he fact that we confirmed that that was a fair price is still . . . conferring a benefit." *Id.* at 29-30.

Although the CVPS Defendants note that they share the objectors' concerns about the "lack of merit of this litigation," (Doc. 84 at 6)[3] and characterize Plaintiff's claims as "extremely weak" (Doc. 84 at 7), they maintain that the Settlement Agreement remains fair, reasonable, and adequate because through it they have been spared the unrecoverable costs of further litigation and have been permitted to settle the litigation on terms acceptable to them. *See* Doc. 84 at 6-7 (citing *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686 (7th Cir. 2008) ("defendants can be trusted to make [nuisance] settlements only if it is in their best interest to do so")).

The court agrees that a settlement that finally resolves pending litigation should not be rejected merely because the claims brought have dubious merit especially when class members are not required to make any monetary contribution towards the settlement. Although the release class members provide by virtue of the Settlement Agreement has value, in light of the overwhelming approval of the Gaz Métro Merger and its subsequent consummation, it is questionable whether any class members would independently pursue litigation arising out of a merger they have overwhelmingly approved and shares they have cashed out. The Settlement Agreement thus represents a reasonable compromise wherein a release related to the transaction in question is offered in exchange for additional disclosures related to that same transaction.

The litigation, had it proceeded, would have been relatively complex and expensive and would have required counsel experienced in securities law, corporate governance, and Vermont statutory and common law. It would have presumably lasted at least eight months which is the standard pre-trial period authorized by this court's Local Rules. Although the Settlement Agreement was reached in the nascent stages of the litigation, it was nonetheless preceded by the filing of a complaint and motion for a

---

[3] At the Fairness Hearing, counsel stated "We do think this case is one that should be tossed out at the pleadings stage and would never have a chance of success." (Tr. 7/11/12 at 52). They nonetheless noted that there was consideration sufficient to support a release. *Id.*

preliminary injunction as well as negotiation of a voluntary disclosure of information necessary to determine the adequacy of proxy disclosures; discovery including depositions and expert witness evaluation, and negotiation and preparation of a protective order.

Because of the nature of the claims, a class action was clearly the most effective, and the only efficient, means of pursuing the claims. If the case proceeded to trial, because of the nature of the claims, class action certification would have likely remained intact.

The Settlement Agreement also falls within the range of reasonableness when compared to the best possible outcome. In light of the court's dismissal on two separate occasions of similar federal securities claims in *IBEW v. CVPS*, the risks of establishing liability and damages would have been considerable. A substantial monetary judgment in favor of the class thus is and was unlikely. It was also unlikely that Plaintiff would be able to obtain preliminary injunctive relief to halt either the shareholder vote or the subsequent merger in light of the exacting burden of proof required for such relief. *See* Fed. R. Civ. P. 65; *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). Accordingly, this case was arguably resolved at the most advantageous time for class members. Although the Defendants could clearly withstand a greater judgment, given the relative merit of Plaintiff's claims, it is not likely that a greater judgment would have been forthcoming. The Settlement Agreement thus falls within a range of reasonableness that properly reflects the potential risks and benefits of continued litigation. *See Wal-Mart Stores, Inc.*, 396 F.3d at 119 ("[T]here is a range of reasonableness with respect to the settlement -- a range which recognizes the uncertainties of the law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]").

"It is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (quoting *Sala v. Nat'l R.R.*

*Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)); *see also* 2 J. McLaughlin, Class Actions: Law and Practice § 6.9 at 6-43 ("Many courts have stated that the reaction of the class should be accorded the greatest weight in the fairness review.").

In this case, only a small handful of objections were received, they were primarily directed at the attorney's fees award and the merits of the lawsuit, and none were presented at the Fairness Hearing itself. Had there been strong opposition to the Settlement Agreement, in light of the publicity that attended the case, the number of direct and indirect recipients of notice, and the detailed nature of the notice, such opposition would almost certainly have been reflected in objections; it was not. *See Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal quotation marks and citation omitted); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 812 (3d Cir. 1995) (the number and vociferousness of the objectors is a factor to consider in weighing reasonableness of proposed settlement); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("[A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement") (citation omitted).

Based upon the foregoing considerations, the Settlement Agreement, except insofar as it addresses attorney's fees which are discussed below, is "fair, reasonable and adequate" and is approved on that basis. Fed. R. Civ. P. 23(e)(2).

**5. Plaintiff's Expenses and Attorney's Fees Award.** Plaintiff requests an award of expenses in the amount of $8,519.81, which includes an expert witness fee of $4,770.00. The request for an award of expenses is not contested, appears reasonable, and is supported by adequate documentation. The court thus approves it as part of the fee award in this matter. *See* 2 J. McLaughlin, Class Actions: Law and Practice § 6.24 at 6-110-111 ("If supported by appropriate documentation, class counsel also is entitled to reimbursement . . . for the reasonable expenses incurred in prosecuting the litigation.");

*In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (ruling that plaintiffs' request for reimbursement of filing fees, expert fees, service of process, travel, legal research, and document production and review were "the type for which 'the paying, arms' length market' reimburses attorneys").

     Plaintiff's request for an attorney's fee award is not as easily resolved. Plaintiff initially requested an attorney's fee and expense award of "up to $975,000.00" as noted in the court's Preliminary Approval Order. *See* Doc. 60 at 4. Plaintiff has since reduced his request to an attorney's fees and expense award of $600,000. Plaintiff's counsel's contemporaneous time records reveal that Class Counsel expended "over 530 hours in attorney and paralegal time with a resulting lodestar of [$]250,464.00." (Doc. 66 at 60.) Plaintiff stresses that the time incurred by Class Counsel reflects only part of the time spent litigating this action. (Tr. 7/11/12 at 60-61.) He notes that "[c]ourts grant multipliers for risky cases of this sort[,]" (Doc. 66 at 61), urges the court to find that "the fee requested is also comparable to fee awards in other cases where a similar benefit was obtained[,] (Doc. 66 at 62) (collecting cases), asks the court to approve a multiplier to reflect both the contingent nature of the fee award and the quality of representation in the award, and argues that lawsuits of this nature are favored by public policy because they "protect[] shareholder rights in corporate change-of-control transactions[.]" (Doc. 66 at 66.)

     The CVPS Defendants oppose Plaintiff's attorney's fee request and contend that Plaintiff should receive no more than an award of fees actually incurred less certain fees which it contends were not specifically incurred in conjunction with this litigation.[4]

---

[4] The CVPS Defendants have reviewed Plaintiff's time records and object to the inclusion of work associated with two entries involving Attorney Brian Moon's time: (1) July 13, 2011: 6.5 hours drafting demand letter pertaining to derivative litigation; and (2) July 21, 2011: 8.75 hours also spent drafting a demand letter pertaining to derivative litigation. Because no derivative litigation was filed, the CVPS Defendants assert that it would be "unreasonable to include and consider the[ ] [derivative demand letter] expenditures of 15.25 hours for purposes of ascertaining Plaintiff's Counsel's lodestar in this matter." (Doc. 89 at 2.)

Pursuant to the Settlement Agreement, any award of attorney's fees and expenses shall not be paid by CVPS shareholders either directly or indirectly. The CVPS merger on June 27, 2012 "was an all cash deal" (Tr. 7/11/12 at 9), class members did not retain their CVPS shares, and thus there is no possibility that class members will bear the burden of the attorney's fees award in the form of increased corporate insurance premiums, diminished dividends, a lower value for their shares, or otherwise. Instead, the Settlement Agreement provides:

> The Parties acknowledge and agree that CVPS or its successor(s)-in-interest shall pay, or cause their respective insurers to pay on behalf of the Individual Defendants and the Company, any fees and expenses awarded by the Court to Plaintiff or Plaintiff's Counsel in connection with the Fee Application within ten (10) business days after the later of (i) the Effective Date, or (ii) the date that an order by the Court approving any award of fees and expenses becomes final and non-appealable, whether by affirmance or on exhaustion of any possible appeal or review, lapse of time, or otherwise.

(Doc. 43-3 at ¶ 13).

Plaintiff's counsel rates vary from $580 to $725 per hour for partners; $425 to $475 per hour for associates, and from $165 to $250 for paralegals. The CVPS Defendants agree that the rates charged by Class Counsel are appropriate and customary for securities litigation of this nature and reflect "national rates." (Tr. 7/11/12 at 66.) While the court agrees that national rates may be appropriate, any determination of the attorney's fees award in this case must reflect that Plaintiff's counsel's rates are not customary for the vast majority of lawsuits filed in Vermont, and thus appear to represent premium rates for specialized litigation. This, in turn, supports a conclusion that Plaintiff's counsel's hourly rates reflect ample compensation for time expended.

The court also "cross-checks" the hours expended in conjunction with a "blended rate" of partners and associates rates yielding an hourly rate of $551.25 for attorneys and of $207.50 for paralegals. *See* 2 J. McLaughlin, Class Actions: Law and Practice § 6.23 at 6-109 ("When applying the lodestar cross-check [for reasonableness], courts insist on application of a blended rate of partners and associates."); *see also In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 306 (3rd Cir. 2005) ("Failure to apply a blended rate . . .

is inconsistent with the exercise of sound discretion and requires vacating and remanding for further consideration."). Excluding the 15.25 contested hours, a blended rate yields a total of $225,428.18 for actual hours incurred by attorneys and $22,113.28 for paralegals for a total of $247,541.46. Based upon the court's cross-check, the court accepts Plaintiff's counsel's fees as reflecting a reasonable hourly rate for this litigation. The court next turns to the nature and amount of the attorney's fees award requested.

"Courts have used two distinct methods to determine what is a reasonable attorneys' fee." *Goldberger*, 209 F.3d at 47. "The first is the lodestar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (citation omitted). "The second method is simpler. The court sets some percentage of the recovery as a fee." *Id.*

"In determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* (citation omitted). "The trend in the Second Circuit has been to express the attorneys' fees as a percentage of the total settlement[.]" *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 4526593, at *13 (S.D.N.Y. Dec. 20, 2007). In determining the proper percentage, the Second Circuit has identified six factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation[ ]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

In this case, the court has no reason to question the time and labor expended by counsel as actually representing fees incurred in this lawsuit. Although not all the fees incurred were arguably *necessary* to bring about a "disclosures-only" Settlement

Agreement which occurred at a very early stage of the litigation, in general, there appears
to be a reasonable causal connection between the fees incurred and the settlement reached
that supports a lodestar award. Because Plaintiff represents that the time incurred does
not reflect all of the time Plaintiff's counsel expended in this lawsuit, any concern
regarding the necessity of the fees incurred is counterbalanced by the fact that not all fees
incurred are reflected in the lodestar amount.

 As the court previously noted, the lawsuit was reasonably complex and required
experienced counsel. Plaintiff's attorneys were competent to pursue the litigation and
pursued it vigorously. The litigation posed considerable risk because the claims were
weak and a substantial recovery was unlikely. As Plaintiff's counsel points out, they
accepted the case on a contingent fee basis and thus there also was a risk of non-payment
of fees. However, these are not the type of risks that are ordinarily "rewarded" by adding
a multiplier. *See Goldberger*, 209 F.3d at 54 (noting that in a case "that [is] risky simply
because it [is] of 'highly questionable merit,' "public policy considerations justif[y] the
award of *no* contingency allowance."); *see also* 2 J. McLaughlin, Class Actions: Law and
Practice § 6.23 at 6-102 ("[W]hen evaluating the risk of nonpayment, courts will not
consider the contingent nature of the fee arrangement and instead will evaluate the merits
of the claims, the strength of the defenses, and the quality of defense counsel."). Rather,
the courts "reward" the bringing of risky but meritorious class action lawsuits when they
seek to vindicate important rights that would be lost or imperiled if class counsel were
not adequately compensated for their efforts. The court does not find those
circumstances present here.

 Of greatest importance in this case, and presumably in others, is the relationship of
the fee request to the results achieved. *See* 2 J. McLaughlin, Class Actions: Law and
Practice § 6.23 at 6-100 ("Litigation being result-oriented, the settlement attained for the
class clearly is the predominant consideration [in awarding attorney's fees], with the time
expended relegated to minimal or no consideration."). In this case, no common fund was
created and thus it would be difficult to factor an award that reflected a percentage of the
recovery. Moreover, no party ascribes a reliable monetary value to the benefits achieved

18

by virtue of the Settlement Agreement, and the market did not reflect any reaction to the Supplemental Proxy. Plaintiff nonetheless contends that class members benefitted substantially by receiving additional disclosures that would allow them to verify Lazard's conclusion that the acquisition price was fair. These benefits, however, appear relatively limited in light of the absence of any proof that a significant number of CVPS shareholders were concerned about the adequacy of the disclosures or had questioned the fairness of the acquisition price. *See In re Nat'l City Corp. S'holders Litig.*, 2009 WL 2425389, at *6 (Del. Ch. July 31, 2009) (observing that "[n]o evidence exists that the additional disclosures significantly affected the outcome of the shareholder vote. Indeed, [the] shareholders overwhelming voted in favor of the merger."). As the CVPS Defendants observed at the Fairness Hearing:

> Look, consistent with our view that this is not a case that has great merit I appreciate that [Plaintiff's counsel] is, you know, making a valiant effort to say that what was done here was a home run. It isn't. And while I don't disagree that in some sense incremental information that further shows this is a good deal is always helpful. And in a sense defendants can't complain about that. To call these things home runs is simply wrong.

(Tr. 7/11/12 at 64-65.) The court thus finds that a fee in the amount of $600,000, which the CVPS Defendants characterize as "patently unreasonable" (Doc. 75 at 10), does not bear a reasonable relationship to the results achieved. Instead, the lodestar appears to more reasonably approximate the relatively minor benefit received by the class. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 421 (2d Cir. 2010) (characterizing a lodestar award as "a presumptively reasonable fee.").

Finally, the court considers whether public policy favors a multiplier in this case and concludes that it does not. Although the court has found the Settlement Agreement is supported by adequate consideration, the sale of CVPS, the acquisition price, and the sale process were not materially altered by Plaintiff bringing this lawsuit. Plaintiff also fails to identify a single material misrepresentation that was corrected through the Supplemental Proxy. While

19

Plaintiff is correct that, in some instances, lawsuits such as this one act as market "watchdogs," this lawsuit did not serve that particular purpose. Instead, at best, Plaintiff helped confirm that the CVPS's existing disclosures summarizing the data and methodologies underpinning Lazard's analysis were accurate and the acquisition price was fair. A lawsuit that served this same purpose in all mergers and acquisitions would drive up the cost of doing business with little or no countervailing benefit to shareholders. See *Why American firms cannot do deals without being sued*, The Economist, June 2, 2012 at 1 (noting that "[m]any [lawsuits are] filed within hours of the deal's announcement; 65% within two weeks" and estimating that in 2011 "a hefty 96% of acquisitions worth more than $500m were attracting suits" with each deal experiencing a "hit by an average 6.2 lawsuits"). Public policy considerations therefore do not support the imposition of a multiplier to reward Plaintiff for bringing this suit or to provide an incentive for other suits of this nature. *See Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1436 (S.D.N.Y. 1994) (ruling that no multiplier was appropriate where, among other things, "as a matter of public policy, judicial encouragement of this type of action appears to be unnecessary.").

In rejecting the need for any multiplier, the court must also consider whether the lodestar, itself, is excessive in the facts and circumstances of this case. On balance, because the lodestar does not reflect the total fees incurred, because it in large part reflects substantial national hourly rates that even the CVPS Defendants concede are appropriate, because the CVPS Defendants, who will directly or indirectly pay the award, do not object to a lodestar award but urge the court to accept it,[5] and because class members will bear no responsibility for it, the court concludes that a lodestar award represents a reasonable attorney's fee award that is not excessive. *See McDaniel*, 595 F.3d at 423.

---

[5] At the Fairness Hearing, the CVPS Defendants argued: "So we think that the lodestar or what the Second Circuit has called the presumptive reasonable fee is really . . . where the Court should focus its consideration in terms of any attorney's fees award here." (Tr. 7/11/12 at 65.)

Based upon the foregoing, the court concludes that an attorney's fee award in the amount of $243,220.25 is fair, reasonable and adequate in addition to the previously approved expense award of $8,519.81. Such sums shall be paid pursuant to the provisions of the Settlement Agreement. Neither the Plaintiff nor Plaintiff's Counsel shall make any other application for an award of fees and expenses in connection with the Action or the subject matter of the Action.

**6. Authorization to Consummate Settlement Agreement.** The parties to the Settlement Agreement are hereby authorized to consummate the terms and provisions of the Settlement Agreement. Without further order of this court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

**7. Released Claims, Released Persons, and Unknown Claims.** Pursuant to the Settlement Agreement and by virtue of this Final Order and Judgment, the following "Released Claims" are fully, finally and forever released and discharged as to any and all of the Released Parties by the Plaintiffs and each and every Class Member and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns.

a. The "Released Claims" means:

any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (defined below), that Plaintiff or any or all other members of the Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, against any of the Released Parties (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of CVPS), which, now or hereafter, are

21

based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, failures to act, transactions, occurrences, statements, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, directly or indirectly, this lawsuit or the subject matter of this lawsuit in any court, tribunal, forum or proceeding, including, without limitation, any and all claims which are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Gaz Métro Merger, including but not limited to the terms and conditions thereof, (ii) the Fortis Agreement, including but not limited to the terms and conditions thereof, (iii) any and all occurrences or matters mentioned or referred to in the CVPS Proxy or Supplemental Disclosures, (iv) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the potential sale of CVPS, (v) negotiations in connection with the Fortis Agreement, the Gaz Métro Merger and with any actual or potential acquirer, (vi) the consideration to be received by Class Members or by any other Person in connection with the Gaz Métro Merger, (vii) the payment of a termination fee in connection with the termination of the Fortis Agreement, (viii) the CVPS Proxy or any other disclosures, public filings, periodic reports, press releases, proxy statements or other statements issued, made available or filed relating, directly or indirectly, to the Gaz Métro Merger, the Fortis Agreement or CVPS's consideration of strategic alternatives, including but not limited to claims under the federal securities laws, (ix) the fiduciary obligations of the Released Parties (defined below) in connection with the Gaz Métro Merger, the Fortis Agreement or any of the matters mentioned or referred to in the CVPS Proxy or Supplemental Disclosures, (x) claims for fees, expenses or costs incurred in prosecuting or settling this lawsuit, or in connection with any claim for benefits conferred on the Class, except as set forth herein, or (xi) any of the matters referred to or alleged in any complaint or amendment(s) thereto filed in this lawsuit (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "Released Claims"); provided, however, that the Released Claims shall not include the right to enforce the Settlement Agreement or any claims for statutory appraisal with respect to the merger of Danaus with and into CVPS by CVPS stockholders who properly perfect such appraisal claims do not otherwise waive their appraisal rights.

(b) The "Released Parties" means:

(i) Lawrence J. Reilly, Robert H. Young, William R. Sayre, Robert L. Barnett, Robert G. Clarke, John M. Goodrich, Robert B. Johnston, Elisabeth B. Robert, Janice L. Scites, William J. Stenger, and Douglas J. Wacek, and their respective heirs, executors, personal representatives, attorneys, advisors, estates, administrators and assigns; (ii) CVPS, Gaz Métro, and Danaus, and their respective past, present or future predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, affiliates, parents, subsidiaries, officers, directors, employees, agents, attorneys, advisors, insurers, reinsurers, accountants, auditors, consultants, financial advisors, lenders, investment bankers, and representatives; and (iii) as to any person or entity included in (ii), its respective past, present or future predecessors, predecessors-in-interest, successors, successors-in-interest, affiliates, parents, subsidiaries, officers, directors, employees, agents, attorneys, advisors, insurers, reinsurers, accountants, auditors, consultants, financial advisors, investment bankers, representatives, heirs, executors, personal representatives, attorneys, estates, administrators and assigns.

(c) The "Unknown Claims" means:

any claim that Plaintiff or any other member of the Class does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement Agreement. With respect to any of the Released Claims, the Parties stipulate and agree that upon court approval of the Settlement Agreement, Plaintiff shall expressly and each member of the Class shall be deemed to have, and by operation of the final order and judgment by the court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiff acknowledges and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiff, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. Plaintiff acknowledges, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement Agreement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

**8. Dismissal with Prejudice.** By stipulation of the parties, this case and all of the claims alleged therein are hereby dismissed on the merits with prejudice as to all Defendants as against the named Plaintiff and all members of the Class with no costs.

**9. Non-occurrence of Effective Date.** If the Effective Date does not occur, this Final Order and Judgment shall be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith except for Paragraphs 18, 25, 26, 27, 29, and 37 of the Settlement Agreement which shall survive any such termination or vacatur, shall be null and void; the parties returned, without prejudice in any way, to their respective litigation positions immediately prior to the execution of their Memorandum of Understanding.

**10. Potential Appeal of Attorney's Fee Award.** The binding effect of this Final Order and Judgment and the obligations of Plaintiff and Defendants under the Settlement Agreement shall not be conditioned upon or subject to the resolution of any appeal from this Final Order and Judgment that relates solely to the issue of Plaintiff's Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

**11. Retained Jurisdiction for Purposes of Enforcement of Settlement Agreement.** Without affecting the finality of this Final Order and Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement Agreement.

**12.** The Clerk of the Court is directed to enter and docket this Final Order and Judgment.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 27th day of September, 2012.

Christina Reiss, Chief Judge
United States District Court